IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2020

## STATE OF TENNESSEE v. EDWARD PARNELL PORTER

**Appeal from the Circuit Court for Marshall County**
**No. 18-CR-138      Forest A. Durard, Jr., Judge**

_____

## No. M2019-01377-CCA-R3-CD

_____

Defendant, Edward Parnell Porter, was convicted of aggravated assault, domestic assault, and misdemeanor reckless endangerment. The trial court merged the domestic assault conviction and its sentence of eleven months, twenty-nine days into the aggravated assault conviction. The court imposed a sentence of eight years and six months as a Range II offender for aggravated assault and eleven months, twenty-nine days for reckless endangerment to be served concurrently with each other and consecutively to a "federal sentence and any unexpired sentence." On appeal, Defendant argues that the evidence was insufficient to support his convictions and that his sentence is excessive. Having reviewed the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Donna Orr Hargrove, District Public Defender; William J. Harold and Douglas Neeley, Assistant Public Defenders; Lewisburg, Tennessee, for the appellant, Edward Parnell Porter.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Robert James Carter, District Attorney General; and Lee Brooks and Drew Wright, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

*Background*

Lanita Wade testified that she and Defendant dated for approximately two years. On May 6, 2018, sometime between 2:00 and 3:00 a.m., she and Defendant were in Defendant's truck traveling toward their home in Petersburg when they got into a verbal altercation with each other. Ms. Wade noted that she and Defendant had "a little to drink" while visiting with friends prior to the altercation and that she hit Defendant first because she believed that he was going to hit her. Ms. Wade testified that Defendant was driving, and she was sitting in the front passenger's seat and that Defendant hit her on the left side of her face near her eye. Ms. Wade said that she was afraid and got into the back seat of the truck to get away from Defendant, but they continued to scuffle. Defendant then pulled over, got out of the truck, opened the back passenger door, and dragged Ms. Wade out of the truck by her feet causing her to strike her head on the door frame. Ms. Wade testified that Defendant began kicking her in the face multiple times while she was on the ground. At that point, Ms. Wade was unable to defend herself and "blacked out." The last thing that she remembered was Defendant standing on top of her and "his foot coming down on [her] face." Ms. Wade said that she woke up alone in the middle of the road near a Tennessee Department of Transportation (TDOT) facility. She did not have a cell phone, and her shoes were in Defendant's truck. Ms. Wade began walking barefooted toward Lewisburg. She was in pain and felt dizzy, and her left eye was swollen shut.

Ms. Wade walked to a McDonald's, which she thought took several hours, and the employees there immediately helped her. Ms. Wade testified that they thought she had been in a car accident. One of the employees gave her a pair of shoes to wear. Emergency personnel were summoned, and Ms. Wade was transported to the Marshall County Medical Center where she was treated for the injuries to her face. She spoke with someone from the sheriff's office who took photographs and helped her locate a shelter to stay in since she was living with Defendant at the time. Ms. Wade testified that she still experiences pain in her face, and her eye does not completely open. She also experiences "white flashes and black spots" in her vision.

On cross-examination, Ms. Wade testified that she did not have much to drink that evening because Defendant "wouldn't let me drink that much." She estimated that she had two or three drinks of some "brown liquor." Ms. Wade admitted that she hit Defendant in the head while they were fighting but she did not recall biting him. She acknowledged that at the preliminary hearing, she testified that she saw Defendant walking away from her. She did not how long she was unconscious before she got up and began walking to toward Lewisburg. It was still dark when she arrived at the McDonald's. Ms. Wade agreed that she reported a pain level of nine out of ten when she arrived at the Marshall County Medical Center. She did not have any broken bones. Ms. Wade further agreed that on June 3, 2018, she went to the Maury Regional Medical

Center the day after being involved in a car accident. She had hit her head on the dashboard during the accident. Ms. Wade agreed that she reported a pain level of ten out of ten. She again went to the Maury Regional Medical Center eleven days later due to a toothache. She also reported a pain level of ten out of ten.

On redirect examination, Ms. Wade testified that she no longer has pain in her head from the car accident; however, she still has pain from where Defendant kicked her in the head. She said that she occasionally has lingering pain from the tooth. Ms. Wade testified that her eye hurts occasionally. She agreed that regardless of whether she had previously testified that she saw Defendant walking away, she lost consciousness at some point and did not recall seeing him drive away. Defendant was not there when she regained consciousness.

Deputy Alva Jerel Neal of the Marshall County Sheriff's Office testified that he was dispatched to the Maury County Medical Center on May 6, 2018, to investigate an assault. He noted that the initial call to the sheriff's office came in at approximately 5:15 a.m. Deputy Neal spoke with Ms. Wade and photographed her injuries. He testified that "[h]er eye was closed. She had an injury to one of her arms. She had a couple of scratches on her chest area under her gown in the front." Deputy Neal testified that he drove to the area on Fayetteville Highway, near the TDOT facility, where the incident occurred to look for Ms. Wade's shoes but he was unable to find them. Deputy Neal testified that the distance from the building to McDonald's was 3.8 miles, and it was 2.4 miles from the TDOT facility to the first street light.

On cross-examination, Deputy Neal admitted that there were several houses located between the TDOT facility and McDonald's. He said that Ms. Wade reported that she and Defendant had gotten into an argument as they were driving down the road. Deputy Neal testified that Ms. Wade also told him that Defendant hit her in the face with his closed fist and that he put her out of the vehicle and left. He said that Ms. Wade told him that she watched Defendant drive away.

Vivian Washak testified that on May 6, 2018, she was the shift manager at the McDonald's in Lewisburg located on North Ellington Parkway. She usually arrived for work sometime between 4:00 and 6:00 a.m. Ms. Washak pulled into the parking lot that morning and saw all of the employees outside of the restaurant gathered around a vehicle. The employees informed her that the victim, who was sitting in the back seat, had been beaten up and left on the side of the road and that she had walked barefooted to the restaurant. Ms. Washak noted that she did not approach the victim but she heard her "crying a little." Ms. Washak retrieved a pair of shoes from the storage shed and gave them to the victim. She also advised the victim to call the police and go to the hospital. Ms. Washak went to work and did not have any further interaction with the victim.

Brandy Humphrey talked to Ms. Wade on May 6, 2018, and photographed her injuries. She observed that Ms. Wade was crying, and the entire side of her face was "swollen and black." Ms. Wade's eye was swollen shut and was also black and blue. Ms. Humphrey testified that Ms. Wade had some bruising on one of her arms as well as a bruise on her breast. Ms. Humphrey stated that Ms. Wade was "distraught, and was crying, upset and tired, in pain." Ms. Wade added that she and Defendant were in an argument about Defendant's other girlfriends.

At trial, the parties made the following stipulation:

> . . . Lanita Wade sought medical treatment at Marshall Medical Center on May 6, 2018. That medical personnel observed bruising and swelling of Ms. Wade's chest and face, a 2 centimeter bruise to her scalp. Ms. Wade reported a pain intensity of 9 out of 10. No bone fractures were observed in the face, wrist or skull. No internal structural damage to Ms. Wade's eye could be determined.

Melanie Bogle, Defendant's cousin, testified on behalf of Defendant. She stated that she photographed what appeared to her to be a bite mark on Defendant's forehead the "day after it happened." She took a second picture of Defendant's side. Ms. Bogle testified that she saw Defendant the day before the photographs were taken, and she did not observe any injuries.

On cross-examination, Ms. Bogle clarified that she took the photographs of Defendant "either the date right after or [a] couple of days right after it happened that they was not there, when I seen him again they was there." Ms. Bogle agreed that Defendant asked her to take the photographs, and she did not believe that they were taken between 2:00 and 5:00 a.m. on May 6, 2018, because the photographs showed that they were taken in daylight. Ms. Bogle did not know if Defendant sought medical treatment or notified law enforcement officers of his injuries. She agreed that the photographs were taken to assist in his defense. Ms. Bogle testified that whenever she had previously been around Defendant and Ms. Wade, everything seemed to be fine. Ms. Bogle admitted that she was convicted of felony theft in 2015.

*Analysis*

## I.    Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his convictions for aggravated assault, domestic assault, and reckless endangerment. He asserts that he was defending himself when he struck Ms. Wade and that her resulting injuries from the assault did not rise to the level of serious bodily injury. Defendant further argues that the evidence was insufficient to support his reckless endangerment conviction because Ms.

- 4 -

Wade's pretrial testimony showed that she was conscious after the assault occurred and was able to protect herself from any oncoming traffic. He also asserts that he could not have known that Ms. Wade was unconscious when he left her in the road because she testified at the preliminary hearing that she watched him walk away.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)).

Aggravated assault as charged in the indictment occurs when a person intentionally or knowingly commits an assault and causes serious bodily injury to another. Tenn. Code Ann. § 39-13-102(a)(1)(A)(i). A person commits assault when the person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). Serious bodily injury is defined as a bodily injury that involves:

(A) A substantial risk of death;
(B) Protracted unconsciousness;
(C) Extreme physical pain;
(D) Protracted or obvious disfigurement;
(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or
(F) A broken bone of a child who is twelve (12) years of age or less[.]

Tenn. Code Ann. § 39-11-106(a)(36); *see also State v. Farmer*, 380 S.W.3d 96, 101-02 (Tenn. 2012). This court has explained that "[w]hile the phrase 'serious bodily injury,' an essential element of the offense of aggravated assault, is not susceptible to precise legal definition, it must describe an injury of a greater and more serious character than that involved in a simple assault." *State v. Barnes*, 954 S.W.2d 760, 765 (Tenn. Crim. App. 1997). "The distinction between 'bodily injury' and 'serious bodily injury' is generally a question of fact for the jury and not one of law." *Id.* at 765-66.

Domestic assault is defined as intentionally, knowingly, or recklessly causing bodily injury to a domestic abuse victim. Tenn. Code Ann. § 39-13-111(b). "Bodily injury" is defined as "including a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). A "domestic abuse victim" includes adults who are dating, who have dated, or who have had a sexual relationship. Tenn. Code Ann. § 39-13-111(a)(2), (3).

First, Defendant contends that the evidence was insufficient to support his convictions for aggravated assault and domestic assault because he acted in self-defense when he struck Ms. Wade. Concerning self-defense, Tennessee Code Annotated section 39-11-611(b)(1) provides that:

[A] person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.

The use of force likely to cause death or serious bodily injury may be justified when a person (1) "has a reasonable belief that there is imminent danger of death or serious bodily injury"; (2) "[t]he danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time"; and (3) "[t]he belief of danger is founded upon reasonable grounds." T.C.A. § 39-11-611(b)(2). When a defendant relies upon a theory of self-defense, it is the State's burden to show that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Whether the defendant acted in self-defense is a question of fact for the jury. *State v.*

*Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). If the jury finds that the defendant acted in self-defense, it is a complete defense to crimes of violence. *Id.* A jury also decides "whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." *State v. Pruitt*, 510 S.W.3d 398, 420 (Tenn. 2016) (quoting *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995)).

### Aggravated Assault and Domestic Assault

At the time of the offenses, Defendant and Ms. Wade had been dating for approximately two years, and they were living together. The two got into a verbal altercation while driving home after drinking and visiting with friends. There is no dispute that Ms. Wade was the initial aggressor, as she admitted that she struck Defendant first because she believed that he was going to hit her. Defendant responded by punching her on the left side of the face near her eye. Ms. Wade testified that she was afraid and got into the back seat of the truck while Defendant was driving, and they continued to scuffle. Defendant eventually pulled the truck over and dragged Ms. Wade out of the truck by her feet causing her to strike her head on the door frame. Ms. Wade testified that Defendant began kicking her in the face multiple times while she was on the ground. At that point, Ms. Wade said that she was unable to defend herself, and she lost consciousness. She eventually woke up lying in the middle of the road without her shoes or her phone.

Although Defendant contends that he acted in self-defense, the jury rejected this testimony, as was its prerogative. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993; *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Taken in the light most favorable to the State, the proof at trial did not demonstrate that Defendant was in danger of death or serious bodily injury at the time he dragged Ms. Wade out of the truck and then kicked her in the face multiple times while she was on the ground. The jury could find that Defendant used unreasonable force on Ms. Wade under the circumstances.

Next, Defendant argues that the evidence was insufficient to support his conviction for aggravated assault because the injuries that Ms. Wade suffered did not constitute serious bodily injury. Defendant relies on *State v. Sims*, 909 S.W.2d 46 (Tenn. Crim. App. 1995) and *State v. Derek Denton*, No. 02C01-9409-CR-9409-CR-00186, 1996 WL 432338 (Tenn. Crim. App. Aug. 2, 1996) in support of his argument. In *Sims*, the victim was struck in the face with a pistol one time. *Id.* at 48. As a result, she had a broken and swollen nose, a bruised cheekbone, two black eyes, and a cut across the bridge of her nose. *Id.* She testified that she experienced extreme physical pain on her face and nose. *Id.* During a hospital visit that lasted approximately two hours, a doctor treated the victim with a surgical band-aid to close the laceration, and she was not prescribed pain medication. *Id.* at 49. The victim also testified that she consulted a plastic surgeon about the cut on her face, but she did not undergo plastic surgery. *Id.* at

48. She missed five weeks of work because of her injuries. *Id.* Construing the meaning of "extreme physical pain" in light of the other statutory factors that constitute serious bodily injury, this court stated, "We do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty." *Id.* at 49. Although this court acknowledged "the difficulty of quantifying or measuring pain," we concluded that the evidence was insufficient to support the element of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement. *Id.* at 49-50. Accordingly, the court modified the defendant's conviction to aggravated robbery. *See* T.C.A. § 39-13-402(a)(1). Later on in another case, this court concluded "that the subjective nature of pain is a question of fact to be determined by the trier of fact, in this case the jury." *State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. at Nashville, Feb. 23, 2006).

In *Denton*, this Court, relying on the testimony of Defendant and his friend, found that the victim was unconscious for approximately one minute. The victim was unsure how long she was unconscious. This court determined: "The fact that the victim was unconscious for such a short amount of time does not satisfy the definition of "protracted unconsciousness" necessary to establish serious bodily injury." *State v. Derek Denton*, 1996 WL 432334, at *5.

Taken in the light most favorable to the State, the evidence shows that Ms. Wade suffered serious bodily injury after being hit and then kicked in the face multiple times by Defendant. After the assault, Ms. Wade was in pain, felt dizzy, and her eye was swollen shut. She was transported to the Marshall County Medical Center where she was treated for the injuries to her face. She remained at the hospital for "hours," and she described her pain intensity as nine out of ten. Both Deputy Neal and Ms. Humphrey observed Ms. Wade at the hospital, several hours apart, and they corroborated Ms. Wade's testimony that her left eye was swollen shut, and the left side of her face was heavily bruised. Photographs taken of Ms. Wade also showed that her eye was swollen shut. At trial, Ms. Wade testified that she still experiences facial pain from the assault, unrelated to a head injury that she sustained from a car accident approximately four weeks after the assault, and her eye still does not completely open. She also still experiences "white flashes and black spots" in her vision. This is sufficient evidence to support a finding of serious bodily injury in that Ms. Wade suffered substantial impairment of a function of a bodily member. *State v. Ronnie Thomas Baker*, M2018-02221-CCA-R3-CD, 2019 WL 4899761. At *4 (Tenn. Crim. App. Oct. 4, 2019)(a photograph of the victim's injured swollen shut eye and the testimony of continued blurred vision constituted serious bodily injury); *State v. Antonio Howard*, No. W2014-02488-CCA-R3-CD, 2016 WL 3131515, at *7 (Tenn. Crim. App. May 26, 2016)(evidence sufficient to establish serious bodily injury where the victim suffered loss of vision).

We also conclude that a jury could infer that Ms. Wade also suffered protracted loss of consciousness further supporting that she suffered serious bodily injury as a result of the assault by Defendant. Ms. Wade testified that she lost consciousness as Defendant kicked her in the face. She testified at trial that she did not recall seeing Defendant drive away, and Defendant was not there when she regained consciousness. She was lying in the middle of the road alone without her shoes and her phone. Ms. Wade testified that the assault occurred sometime between 2:00 and 3:00 a.m., and the initial call to police arrived at 5:15 a.m. Deputy Neal testified that the distance between the area where Ms. Wade was abandoned by Defendant and the McDonald's to which she walked barefooted was 3.8 miles. From the amount of time that elapsed between the time that the assault occurred and the time that Ms. Wade arrived at McDonald's and the police were called, a jury could infer that Ms. Wade suffered a protracted loss of consciousness. Defendant argues that Ms. Wade's testimony was not credible because in her statement to Deputy Neal and in her testimony at the preliminary hearing, Ms. Wade said that she saw Defendant drive away in contrast to her testimony at trial that the last thing she remembered before losing consciousness was Defendant standing on top of her and "his foot coming down on [her] face." However, "[q]uestions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

Upon our review, we conclude that the evidence supports Defendant's convictions for aggravated assault and domestic assault. Defendant is not entitled to relief on this issue.

*Reckless Endangerment*

Defendant argues that the evidence was insufficient to support his conviction for reckless endangerment because Ms. Wade had previously told Deputy Neal and testified at the preliminary hearing that she was conscious and watched Defendant walk away. Therefore, she was "able to protect herself from any oncoming traffic, though there was no mention of any cars going by in her testimony." Defendant further argues that this demonstrates that Defendant was unaware that he was leaving Ms. Wade unconscious in the road.

Misdemeanor reckless endangerment occurs when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103 (1997). A person "acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-106(a)(31) (1997). T.C.A.

§ 39-11-106 provides, "[t]he risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint."

With respect to reckless endangerment, the threat of death or serious bodily injury must be "imminent"; therefore, "the person must be placed in a reasonably probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999). Moreover, "the term 'zone of danger' may be employed to define that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id.*

In this case, the jury obviously accredited Ms. Wade's testimony that she lost consciousness after being assaulted by Defendant. He left her lying injured in the middle of the highway in the dark with impaired vision and no shoes or cell phone. There were no street lights for 2.4 miles, and Ms. Wade walked 3.8 miles barefooted to a McDonald's to get help. As argued by the State, this shows a complete disregard for the victim's well-being and constituted "a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from [his] standpoint." T.C.A. § 39-11-302 (c). This evidence was sufficient to support Defendant's conviction for misdemeanor reckless endangerment.

**Sentencing**

Defendant argues that the sentence imposed by the trial court is excessive. More specifically, he challenges the weight given to the enhancement and mitigating factors, and he asserts that the denial of alternative sentencing was improper given the facts of the case. He further asserts that alternative sentencing "would help preserve precious Department of Corrections resources."

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the Sentencing Act, trial courts are to consider the following factors when

determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The "*Bise* standard is the appropriate standard of review in misdemeanor sentencing cases." *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *16 (Tenn. Crim. App. February 11, 2019).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Trial courts are "required . . . to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701. Moreover, a trial court is "guided

by - but not bound by - any applicable enhancement factors when adjusting the length of a sentence[,]" and its "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

In this case, the record reflects that the trial court, in sentencing Defendant, considered all appropriate principles set forth in T.C.A. § 40-35-210(b). The trial court applied two enhancement factors, including Defendant's history of criminal convictions in addition to those necessary to establish the range and that Defendant was on release from a federal sentence when he committed the offenses. T.C.A. § 40-35-114 (1) and (13). Defendant does not contest the application of those factors, and the record reflects that they were appropriately applied. The trial court also applied three mitigating factors: that the defendant acted under strong provocation; substantial grounds exist tending to excuse or justify the conduct though failing to establish a defense; and defendant, although guilty of the crime, committed it under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. T.C.A. § 40-35-113 (2), (3), and (11). The trial court noted that it gave the most weight to mitigating factor (11).

The trial court merged Defendant's conviction and sentence for domestic assault into his aggravated assault conviction. Defendant's conviction for aggravated assault is a Class C felony. As a Range II offender multiple offender, Defendant was subject to a sentencing range of six to ten years. T.C.A. § 40-35-112(b)(3). He was subject to a potential sentence of eleven months, twenty-nine days for reckless endangerment, a Class A misdemeanor and to domestic assault, also a Class A misdemeanor.

We conclude that the trial court properly sentenced Defendant. The trial court considered the relevant principles and sentenced Defendant to a within range sentence of eight years and six months for aggravated assault and eleven months, twenty nine days for both reckless endangerment and domestic assault. Defendant argues that the trial court erred in weighing the enhancement and mitigating factors. However, the 2005 amendments to the Sentencing Act deleted appellate review of the mitigating and enhancement factors, so this issue is not appropriate to raise on appeal. *State v. Richard Tipton*, No. E2011-02354-CCA-R3-CD, 2012 WL 5422272, at *7 (Tenn. Crim. App. Nov. 7, 2012). We cannot conclude that the trial court abused its discretion by sentencing Defendant to an effective sentence of eight years and six months.

Defendant also argues that the trial court erred by ordering him to serve his effective sentence in confinement. Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should

be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2),(4).

As a Range II offender, Defendant in this case was eligible for alternative sentencing, but he was not considered a favorable candidate for alternative sentencing options. T.C.A. § 40-35-102(6). The record supports the trial court's denial of alternative sentencing. It appears from the record that the trial court denied Defendant's request for alternative sentencing on the fact that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant. T.C.A. § 40-35-103(C). As stated above, Defendant was on release from a federal sentence when he committed the offenses in this case. Defendant has also been released on parole in other cases, which he successfully completed, yet he continues to commit crimes. A trial court may deny alternative sentencing if it finds that any one of the factors found at T.C.A. § 40-35-103 apply. *State v. Christopher Allen*, No. W2016-00505-CCA-R3-CD, 2017 WL 764552, at *4 (Tenn. Crim. App. Feb. 24, 2017); *State v. John Anthony Garrett*, No. E2012-01898-CCA-R3-CD, 2013 WL 5373156, at *4 (Tenn. Crim. App. Sept. 23, 2013). Accordingly, the trial court did not abuse its discretion in ordering Defendant to serve his sentence in confinement.

**CONCLUSION**

After a thorough review of the record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE